IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GRAY LAW, LLP**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-1123-L** |
| | § | |
| **TRANSCONTINENTAL INSURANCE COMPANY**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (i) Defendants' Motion for Summary Judgment, filed June 25, 2007, and (ii) Gray Law's Motion for Summary Judgment, filed August 10, 2007. After careful consideration of the motions, briefs, responses, replies, appendices, competent summary judgment evidence, record, and applicable law, the court **grants** Defendants' Motion for Summary Judgment, **overrules as moot** Defendant's objections to Plaintiff's summary judgment evidence and briefs, and **denies** Gray Law's Motion for Summary Judgment.

**I.    Factual and Procedural Background**

On May 15, 2006, Gray Law, L.L.P. ("Plaintiff" or "Gray Law") filed suit in state court against Transcontinental Insurance Company ("Transcontinental")[1] for breach of contract. Gray Law represented Daniel Huckabee ("Huckabee") against a hospital and medical providers that caused permanent injury while treating him for a work-related injury. Transcontinental was the workers' compensation insurance provider for Huckabee's employer. Because it paid benefits to

---

[1]Transcontinental is sometimes referred to as CNA in the documents submitted as summary judgment evidence.

**Memorandum Opinion and Order- Page 1**

Huckabee, Transcontinental was statutorily entitled to repayment of those benefits from Huckabee's recovery. This case arises out of a dispute involving an alleged contract for attorney's fees between Gray Law and William Pratt ("Pratt"),[2] and Transcontinental, for services rendered in the Huckabee litigation. Gray Law contends that Transcontinental breached the alleged contract by failing to pay as agreed. Transcontinental contends that there was no contract and, in the alternative, that Gray Law's claim for attorneys's fees has otherwise been extinguished.

The court now sets forth the applicable facts upon which it relies to decide the pending summary judgment motions. Because each party has moved for summary judgment, both versions of disputed facts are included.

Huckabee was injured during the course of his employment. Huckabee underwent surgery for the work-related injury, and complications from the surgery led to permanent brain damage. Transcontinental, the workers' compensation insurance provider for Huckabee's employer, paid benefits to Huckabee that included the reasonable and necessary medical expenses associated with the complications from the surgery. Huckabee retained Gray Law, and Gray Law filed a medical malpractice action against the hospital and the medical providers associated with the surgery (the "Huckabee case"). Because the net amount recovered in a malpractice suit must first be used to reimburse Transcontinental for the benefits paid for the injury, a statutory lien arose in favor of Transcontinental in the amount of the benefits paid.

---

[2]Pratt was Huckabee's initial counsel. Because he was a less experienced attorney, he did not believe he had adequate experience to handle the case alone. He approached Jay K. Gray at Gray Law, who agreed to be lead counsel in the case. Pratt served as cocounsel.

**Memorandum Opinion and Order- Page 2**

On February 20, 2002, Jay K. Gray ("Gray"), managing partner of Gray Law, sent a letter ("the February Letter")[3] to Transcontinental's attorney, Jeffrey M. Lust ("Lust"), which read, in relevant part, as follows:

> Pursuant to your request, enclosed is a copy of the most recent petition filed in the above-referenced matter. Please send me a print-out of all medical expenses paid by CNA. I want to verify that we have all the medical providers identified in our discovery responses and their bills are proved up by medical affidavit.
>
> It is my understanding that it is CNA's wish to have our firm represent their interest in this matter. To that end, we will receive a fee of one-third of the insurance carrier's recovery and a proportionate share of expenses. Please acknowledge CNA's agreement, by signing in the space provided below and returning it to me.

Def.'s App. Vol. I, 10. Lust states that after receiving this letter, he had a conversation with Pratt to clarify the issue of attorney's fees.[4] Lust signed the February Letter and returned it as an attachment to his letter to Pratt, dated March 8, 2002 (the "March Letter"). The March Letter read, in relevant part, as follows:

> Attached is the letter that you sent regarding our agreement on fees and expenses in the above referenced matter. Per our discussion of March 4th, it is understood that my client's agreement to reduce its lien by 1/3 represents the 1/3 fee mentioned in the attached letter. Further, we agreed that my client's share of proportionate expenses will be calculated based on what percentage that my client's actual recovery bears to the total settlement amount or verdict. (i.e. If the total settlement or verdict is $10 million and CNA recovers $1 million, then CNA will pay 10% of the expenses). In that regard, please provide a detailed account of what the expenses are to date.

---

[3] Both Gray and Pratt signed the February Letter.

[4] Pratt states that if this conversation occurred, it would have been between Lust and Gray. Gray states that his recollection is that Pratt spoke with Lust.

**Memorandum Opinion and Order- Page 3**

> Finally, as soon as I obtain a copy of the entire claim file, I will review it to provide a listing of all the medical providers that we have. I look forward to working with you. If you have any questions, please do not hesitate to let me know.

Def.'s App. Vol. I, 11. Gray Law believes that an agreement was formed for the payment of attorney's fees when Transcontinental signed the February Letter. Transcontinental states that the March Letter evidences that there was no meeting of the minds such that a contract was formed by its execution of the February Letter.

On March 7, 2002, Lust filed a plea in intervention to protect Transcontinental's interest in the malpractice suit. In November 2002, the case was tried to a jury. Gray was the lead attorney. Lust attended portions of the trial, but did not question witnesses or make any statements on the record. Lust also attended hearings to evaluate the progression of the case and to determine what, if any, impact the proceedings would have on Transcontinental's interests. Lust attended several of the more than forty depositions taken in the case, but did not ask any questions. During trial, Lust did nothing to prove or establish the liability for recovery. Although Transcontinental did not retain any experts for trial, it paid Gray Law $19,770.44 for trial expenses. After almost three weeks of trial, the jury began deliberations. On the third day of deliberations, the court declared a mistrial because the jury was deadlocked.

In February 2004, Huckabee's malpractice case was settled at mediation for $4,200,000. Gray negotiated Huckabee's portion of the settlement, and Lust states that he negotiated Transcontinental's portion. According to its contingency fee agreement with Huckabee, Gray Law was to receive forty percent of the gross recovery plus litigation expenses. As part of the settlement, Gray Law agreed to receive forty percent of the recovery amount after expenses. Gray Law received $1,303,180 as a lump sum payment and $500,000 in periodic payments from an annuity.

**Memorandum Opinion and Order- Page 4**

In total, Gray Law received $1,503,180 (37.6% of the recovery after expenses) in attorney's fees. Although Transcontinental's final lien was $1,664,895, it settled for and received $1,400,000.

On July 19, 2004, Gray sent a demand letter to Lust that read in relevant part as follows:

> Demand is hereby made upon CNA/Transcontinental Insurance Company to pay the previously agreed upon attorney's fees and *prorata* expenses for the recovery of the subrogation amount in the above-referenced cause.
>
> The total sum due and owing by CNA/Transcontinental Insurance Company's share of the expenses is $534,424.94 which constitutes $466,200.00 for attorney's fees (33.3% of $1,400,000.00) and $68,324.94 for expenses (1/3 of the total expenses of $205,180.00).

Def.'s App. Vol. I, 42. Transcontinental did not pay these amounts.

On May 15, 2006, Gray Law filed suit in state court against Transcontinental for breach of contract and sought $534,424.94. On June 26, 2006, Transcontinental removed the case to federal court based on diversity of citizenship and the amount in controversy exceeding $75,000. On June 25, 2007, Transcontinental filed a motion for summary judgment contending that it is entitled to judgment for the following reasons: (i) the February Letter and March Letter do not form a contract because there was no meeting of the minds or there was a failure of consideration; (ii) if the February Letter and the March Letter formed an agreement, then Gray Law cannot recover because it did not comply with the relevant statute; (iii) Gray Law suffered no damages from Transcontinental's alleged breach because Gray Law received forty percent of the recovery after expenses and payment of additional fees would result in a fee over fifty percent of the gross settlement; (iv) any right that Gray Law had to attorney's fees under Tex. Labor Code § 417.003 (Vernon 2006), was compromised and resolved when it received forty percent of the recovery after expenses; (v) Transcontinental reduced its lien from $1,646,119.83 to $1,400,000, the court

approved the settlement, and Gray Law's acceptance of the court-approved settlement discharged any previous obligation that Transcontinental had to pay Gray Law; (vi) under the statute, Lust actively represented Transcontinental, so the state court was to apportion fees without regard to the alleged agreement; and (vii) the state court that presided over the third-party action is the only court with jurisdiction to apportion attorney's fees in this case.

Gray Law disagrees and on August 10, 2007, filed its motion for summary judgment. Gray Law contends that the signed February Letter was a contract and that the contract was made pursuant to Tex. Labor Code § 417.003(a), which entitled it to attorney's fees if Transcontinental was not actively represented by counsel. Gray Law also contends that Lust did not actively represent Transcontinental, so Transcontinental breached the contract when it refused to pay its share of attorney's fees and expenses. Gray Law further contends that its claim against Transcontinental was separate from the underlying medical malpractice claim that was settled, and that its claim was not released as a result of the settlement in the Huckabee case. In response, Transcontinental advances the same arguments made in its motion for summary judgment.

## II.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a

motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

### A. Defendants' Motion for Summary Judgment

#### 1. Breach of Contract

Transcontinental contends that several alternative bases entitle it to summary judgment. First, no contract was formed by its execution of the February Letter because there was no meeting of the minds. Second, if a contract exists, then there was failure of consideration such that Transcontinental's performance was excused. Third, if a contract exists and its non-performance constitutes a breach, then Gray Law suffered no damages because the firm was paid in full by Huckabee. Fourth, Gray Law's claim for attorney's fees was either released or resolved by accord and satisfaction when the firm agreed to the attorney's fees approved by the court in the settlement agreement in the Huckabee case. Fifth, Gray Law is not entitled to attorney's fees under Texas Labor Code.

Gray Law contends that since Lust did not actively represent Transcontinental, the Texas Labor Code requires Transcontinental to pay attorney's fees according to the parties' agreement or, in the absence of an agreement, according to the statute. According to Gray Law, the signed February Letter was the type of agreement to which the statute refers, and Transcontinental breached the agreement by failing to pay the one-third attorney's fees. Gray Law also contends that neither the attorney's fees received from Huckabee nor the amount of attorney's fees agreed upon in the court-approved settlement agreement are relevant to this case. Gray Law argues that its action

**Memorandum Opinion and Order- Page 8**

against Transcontinental for attorney's fees is separate and distinct from the settlement of the Huckabee litigation.

Gray Law contends that the alleged contract forming the basis of its cause of action was made pursuant to Tex. Lab. Code. Ann. § 417.003(a). Accordingly, the court's analysis centers around the operative statute.

The Texas Workers' Compensation statute provides that, as compensation for pursuing a third-party action, the injured worker's attorney may recover fees from the worker's compensation insurer for the services rendered. Tex. Lab. Code. Ann. § 417.003.

> Texas courts have determined [that] the statute provides three ways by which an attorney may recover fees based upon a subrogation recovery: (1) where the insurer has an attorney but he does not actively represent it; (2) where the worker's attorney represents both the worker and the insurer; and (3) where the insurer has an attorney who actively represents it and participates in obtaining a recovery.

*Erivas v. State Farm*, 141 S.W.3d 671, 677 (Tex. App.–El Paso 2004, no pet.). An insurer's interest is deemed to be actively represented if its attorney "took steps, adequate when measured by the difficulty of the case, toward prosecuting the claim." *Hartford Ins. Co. v. Branton & Mendelsohn, Inc.*, 670 S.W.2d 699, 702 (Tex. App.–San Antonio 1984, no writ). The purpose of this statute is to pay an injured worker's attorney for the benefit accruing to the worker's compensation insurer as a result of such attorney's efforts in the recovery or settlement of the third-party case. *Texas Workers' Comp. Ins. Fund v. Alcorta*, 989 S.W.2d 849, 851 (Tex. App.–San Antonio 1999, no pet.) (citing *Illinois Nat. Ins. Co. v. Perez*, 794 S.W.2d 373, 377 (Tex. App.–Corpus Christi 1990, writ denied). Stated differently, the statute was enacted to prevent the insurer from receiving a "free ride" from the efforts of the injured worker's attorney. *Caesar v. Bohacek*, 176 S.W.3d 282, 285 (Tex. App.–Houston [1st Dist.] 2004, no pet).

Because the statute governs whether and to what extent Gray Law may recover attorney's fees from Transcontinental for the services rendered in the Huckabee case, the court first determines which of the three options outlined above applies. With respect to recovery of attorney's fees where the worker's attorney represents both the worker and the insurer, the court determines that this option does not apply. Both parties indicate that Lust was counsel for Transcontinental. Gray Dep. 13:18-20, Apr. 18, 2007; Lust Dep. 35:18-21, Apr. 19, 2007. Therefore, Transcontinental's reliance on this argument in support of its motion for summary judgment is unpersuasive.

A selection between the remaining two options requires the court to resolve whether Lust actively represented Transcontinental and participated in obtaining its recovery. In this regard, Transcontinental contends that "Lust actively represented Transcontinental to the full extent necessary to protect its subrogation interest and obtain a recovery." Def. Mot. Summ. J. Br. 18. Gray Law disagrees and contends that "[a]lthough Jeff Lust was counsel of record for Transcontinental . . . , his representation did not amount to 'actively representing' or 'actively participating.'" Gray Law's Resp. Br. 27-28. The court agrees with Transcontinental.

Lust's actions on behalf of Transcontinental was sufficient to be deemed active representation of Transcontinental and participation in obtaining its recovery. Lust filed a plea in intervention after reviewing the compensation file; filed other pleadings; answered discovery; filed a stipulation as to the subrogation amount; attended several depositions and deemed no further inquiry of the deponents was necessary; attended all mediations and negotiated to further Transcontinental's interests; attended pretrial hearings and made no further argument because he deemed none was necessary; attended portions of trial and, upon being contacted by the judge when an issue arose, resolved the issue that affected Transcontinental's interest; verified and ensured the

**Memorandum Opinion and Order- Page 10**

accuracy of Transcontinental's lien; and participated in the settlement negotiations between Huckabee and the third-party defendants, which resulted in a $1.4 million recovery on the $1.66 million subrogation claim. Gray Law does not provide competent summary judgment evidence to refute that Lust took these actions. Instead, it argues that based on the complexity of the case, Lust actions were insufficient for "active representation" and "active participation" under the statute because he did nothing to establish liability in this case. That Gray Law, in developing its client's case and increasing the settlement value, may have also assisted Transcontinental, does not change Lust's active representation and separate negotiation of Transcontinental's lien recovery. *Bedair v. Houston Indep. Sch. Dist.*, No. 01-01-00083-CV, 2001 WL 1198680 *3 (Tex. App.–Houston [1st Dist.] 2001) (unpublished opinion). The court determines, therefore, that Lust actively represented Transcontinental and actively participated in obtaining its recovery. *See International Ins. Co. v. Burnett & Ahders, Assoc.*, 601 S.W.2d 199, 201-02 (Tex. Civ. App.–El Paso 1980, writ ref'd n.r.e.) (remanding the cause after holding insufficient evidence supported the trial court's conclusion that the insurer's attorney did not actively represent its interest, when the insurer's attorney (1) reviewed the compensation file, (2) filed an intervention plea in the third-party suit, (3) sought a stipulation on the subrogation amount, and (4) negotiated a settlement with the third-party defendant's attorney, which resulted in a $14,000 recovery on a $14,265.85 subrogation claim); *Lee v. Westchester Fire Ins. Co.*, 534 S.W.2d 392, 395-96 (Tex. Civ. App.–Amarillo 1976, no writ) (holding, under the predecessor to Tex. Lab. Code Ann. § 417.003(c), that some evidence supported trial court's finding that the insurer's interest was "actively represented" by its attorney, when he (1) filed intervention petition after reviewing the file, (2) considered interrogatories and deemed no further inquiry was necessary, (3) amended the intervention petition after the insurer and injured worker had settled the

compensation claim, (4) communicated with the third-party defendant's counsel, and (5) participated in the culmination of the settlement between the claimant and the third-party defendant to the extent of "protecting and securing" the insurer's full subrogation interest). Accordingly, Gray Law, assuming that the amount requested does not exceed the statutory maximum, is entitled to recover attorney's fees pursuant to the third option, where the insurer has an attorney who actively represents it and participates in obtaining a recovery. Tex. Lab. Code. Ann. § 417.003(c).

The applicable statute, Tex. Lab. Code. Ann. § 417.003(c), requires a court to award attorney's fees, payable out of the insurer's subrogation recovery, and apportion the fee award between the worker's attorney and the insurer's attorney based upon the contribution of each attorney toward the subrogation recovery. This portion of the statute does not allow the parties to form an agreement regarding apportionment. Therefore, whether the February Letter and the March Letter constituted a valid agreement between the parties is of no moment.[5] Because the existence of a contract is not relevant to deciding this dispute, there can be no genuine issue of material fact as to the alleged breach of such agreement. Therefore, Transcontinental is entitled to judgment as a matter of law on Gray Law's breach of contract claim.

### 2. Apportionment

Transcontinental contends that apportionment may only be made by the court presiding over the third-party action. Gray Law, citing *Law Offices of Moore & Associates v. Aetna Ins. Co.*, 902 F.2d 418 (5th Cir. 1990), argues that a federal district court may apportion the attorney's fees. The court agrees with Gray Law. In *Moore*, an attorney who represented the heirs of an injured worker filed suit in state court against the workers' compensation insurer to recover fees for his role in

---

[5]This is especially true if, as Gray Law contends, the alleged contract was made pursuant to Tex. Lab. Code. Ann. § 417.003(a). As the court has already determined, section 417.003(a) does not apply to this case.

**Memorandum Opinion and Order- Page 12**

relieving the insurer of future compensation payments. *Id.* at 419. The insurer removed the case to federal court, and the trial court awarded and apportioned attorney's fees under section 417.003(c). *Id.* at 419-20. On appeal, the court affirmed the judgment of the district court, except as it related to certain prejudgment interest. *Id.* at 423. The court determines, therefore, that it may apportion the attorney's fees in this case.

According to Tex. Lab. Code. Ann. § 417.002, the workers' compensation insurer is entitled to be reimbursed out of the "net amount recovered" by the worker in a third-party action. The "net amount recovered" is the third-party recovery reduced by the allowable attorney's fees under section 417.003. *Alcorta*, 989 S.W.2d at 851-52. Texas courts construe this statute as providing for the payment of the injured worker's attorney's fees from the insurer's recovery, up to one-third of such recovery. *Erivas*, 141 S.W.3d at 678 (insurer entitled to recovery after payment of claimant's attorney's fees); *Alcorta*, 989 S.W.2d at 852 ("[T]he 'net amount recovered' by the employee is the third-party recovery less the employee's attorney's fees."); *Illinois Nat. Ins. Co. v. Perez*, 794 S.W.2d 373, 377 (Tex. App.–Corpus Christi 1990, writ denied) (Under the prior version of workers' compensation statute, claimants were entitled to one-third of subrogation recovery as payment of their attorney's fees.). Although the statute requires these fees to be paid from the insurer's subrogation recovery, the statute does not envision that an injured worker's attorney will recover fees from both the injured worker and the insurer. To hold otherwise would be to allow an attorney to receive a windfall by collecting double attorney's fees for workers' compensation lawsuits. This is not what the Texas legislature intended when it drafted this statute, and thus, it cannot be the law.

Transcontinental recovered $1,400,000. The court's award of attorney's fees, therefore, was not to exceed $466,200 (one-third of $1,400,000). Gray Law has received $1,303,180 as a lump sum payment and $500,000 in periodic payments from an annuity. In total, Gray Law received $1,503,180 in attorney's fees. Because Gray Law has already received the maximum amount of attorney's fees recoverable by law, it may not receive an additional award of attorney's fees. The court's resolution of the breach of contract and apportionment issues is dispositive; therefore, it does not reach the remainder of the grounds upon which Transcontinental moves for summary judgment.

### B. Defendant's Objections to Plaintiff's Summary Judgment Evidence, Brief in Response to Defendant's Motion for Summary Judgment, and Brief in Support of its Motion for Summary Judgment

Transcontinental advances a number of objections to Gray Law's summary judgment evidence and summary judgment briefs. To the extent that the Affidavit of Jay K. Gray included statements that were conclusions of law, the court did not consider them, and Transcontinental's objections to Gray Law's summary judgment evidence are **overruled as moot**. With respect to Gray Law's briefs, the court made an independent review of the summary judgment evidence and did not rely on either party's unsupported characterizations of the facts. Accordingly, Transcontinental's objections to Gray Law's summary judgment evidence are also **overruled as moot**.

### IV. Conclusion

For the reasons herein stated, there are no genuine issues of material fact as to Gray Law's claim for breach of contract. Therefore, Transcontinental is entitled to judgment as a matter of law as to this claim, and the court **grants** Defendant's Motion for Summary Judgment. Because the court has granted Defendant's Motion for Summary Judgment, to now hold that Gray Law's motion should be granted or that a genuine issue of material fact exists would be legally inconsistent.

Accordingly, the court **denies** Gray Law's Motion for Summary Judgment. The court also **overrules as moot** Defendant's objections to Plaintiff's summary judgment evidence and briefs. The court **dismisses with prejudice** Gray Law's breach of contract claim against Transcontinental. Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

    **It is so ordered** this 25th day of March, 2008.

                                                  Sam A. Lindsay
                                                  United States District Judge